# NOTE

February 15, 2018                              ORANGE,                                  California
[Date]                                         [City]                                   [State]

6031 N Front St, Philadelphia, PA 19120
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.  **$143,450.00**      (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is    **American Financial Network, Inc., DBA: Orion Lending, a
California Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of  **4.875 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in
this Note.

## 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1st**  day of each month beginning on  **April 1, 2018.**       I will make
these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on  **March 1, 2048,**       I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event
as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may
owe under this Note.

I will make my monthly payments at  **10 Pointe Drive Suite 330
Brea, CA 92821**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S.  **$759.15.**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of
my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such
loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already
collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund
by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the
reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %**    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;



(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**NAVIN SOK**

*Sidon Bou by Timmy Kuoch, ATTORNEY-IN-FACT* _____ (Seal)
**SIDON BOU, BY TIMMY KUOCH , ATTORNEY-IN-FACT**

**Lender: American Financial Network, Inc., DBA: Orion Lending**
**NMLS ID:**
**Broker: C███████nancial Mortgage, LLC**
**NMLS ID:**
**Loan Orig███████ndy Ly**
**NMLS ID:**

*[Sign Original Only]*

**ALLONGE**



## AMERICAN FINANCIAL NETWORK INC.
— FINANCING THE AMERICAN DREAM —

■

| | |
|---|---|
| **Loan Date:** | 02/15/2018 |
| **Borrower(s):** | NAVIN  SOK |
| | SIDON  BOU |

**Property Address:** 6031 N Front St
Philadelphia, PA 19120

**Principal Balance:** $143,450.00

### PAY TO THE ORDER OF

### WITHOUT RECOURSE

**COMPANY NAME:**

American Financial Network, Inc., DBA Orion Lending, A California Corporation

By: _____    Collateral Analyst _____
Jomari Mamaradlo    Title

ALLONGE TO THE NOTE-Orion (JM)-116.doc • Rev. 09/07/2016    **Page 1 of 1**

## POWER OF ATTORNEY
### (Purchase of Real Property)

KNOW ALL MEN BY THESE PRESENTS, that I, **SIDON BOU**, have constituted, made and appointed, and by these presents do constitute, make and appoint **TIMMY KUOCH**, my true and lawful agents to sign and execute any and all documents, forms, receipts, etc., that are necessary to complete the purchase of real property, the address of which is:

### 6031 N. Front Street, Philadelphia, PA 19120

Without in any way limiting the generality of the foregoing, my agents are authorized hereunder to sign, seal and deliver the following, and any amendments, modifications and renewals thereof: **Agreements of Sale, Mortgage Commitments, Bond or Note, Mortgage encumbering subject realty, Affidavits of Title, point letters, receipts, settlement sheet, and any and all other instruments thereof.**

This Power is to continue during any disability I may hereafter suffer, to do all things necessary and convenient to purchase and finance the property indicated above.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 5th day of February, 2018.

SIGNED, SEALED AND DELIVERED
in the presence of:

_____          _____
                                          **SIDON BOU**

COMMONWEALTH OF PENNSYLVANIA:

COUNTY OF PHILADELPHIA:                          :

On this, the 5th day of February 2018, before me, the undersigned officer, personally appeared **SIDON BOU** known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument, and she acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires _____4-11-18_____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JOANNE JACKSON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 11, 2018

2

<u>Prepared by and Return to:</u>

Focus Abstract, Inc.
7901 Bustleton Avenue
Suite 203
Philadelphia, PA  19152

███████████████

BRT  ████████████

# NOTICE

THE PURPOSE OF THIS POWER OF ATTORNEY IS TO GIVE THE PERSON YOU DESIGNATE (YOUR "AGENT") BROAD POWERS TO HANDLE YOUR PROPERTY, WHICH MAY INCLUDE POWERS TO SELL OR OTHERWISE DISPOSE OF ANY REAL OR PERSONAL PROPERTY WITHOUT ADVANCE NOTICE TO YOU OR APPROVAL BY YOU.

THIS POWER OF ATTORNEY DOES NOT IMPOSE A DUTY ON YOUR AGENT TO EXERCISE GRANTED POWERS, BUT WHEN POWERS ARE EXERCISED, YOUR AGENT MUST USE DUE CARE TO ACT FOR YOUR BENEFIT AND IN ACCORDANCE WITH THIS POWER OF ATTORNEY.

YOUR AGENT MAY EXERCISE THE POWERS GIVEN HERE THROUGHOUT YOUR LIFETIME, EVEN AFTER YOU BECOME INCAPACITATED, UNLESS YOU EXPRESSLY LIMIT THE DURATION OF THESE POWERS OR YOU REVOKE THESE POWERS OR A COURT ACTING ON YOUR BEHALF TERMINATES YOUR AGENT'S AUTHORITY.

YOUR AGENT MUST ACT IN ACCORDANCE WITH YOUR REASONABLE EXPECTATIONS TO THE EXTENT ACTUALLY KNOWN BY YOUR AGENT AND, OTHERWISE, IN YOUR BEST INTEREST, ACT IN GOOD FAITH AND ACT ONLY WITHIN THE SCOPE OF AUTHORITY GRANTED BY YOU IN THE POWER OF ATTORNEY.

THE LAW PERMITS YOU, IF YOU CHOOSE, TO GRANT BROAD AUTHORITY TO AN AGENT UNDER POWER OF ATTORNEY, INCLUDING THE ABILITY TO GIVE AWAY ALL OF YOUR PROPERTY WHILE YOU ARE ALIVE OR TO SUBSTANTIALLY CHANGE HOW YOUR PROPERTY IS DISTRIBUTED AT YOUR DEATH. BEFORE SIGNING THIS DOCUMENT, YOU SHOULD SEEK THE ADVICE OF AN ATTORNEY AT LAW TO MAKE SURE YOU UNDERSTAND IT.

A COURT CAN TAKE AWAY THE POWERS OF YOUR AGENT IF IT FINDS YOUR AGENT IS NOT ACTING PROPERLY.

THE POWERS AND DUTIES OF AN AGENT UNDER A POWER OF ATTORNEY ARE EXPLAINED MORE FULLY IN 20 PA.C.S. CH 56.

IF THERE IS ANYTHING ABOUT THIS FORM THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER OF YOUR OWN CHOOSING TO EXPLAIN IT TO YOU.

**I HAVE READ OR HAD EXPLAINED TO ME THIS NOTICE AND I UNDERSTAND ITS CONTENTS.**

DATE:                                                      PRINCIPAL:

_____2/5/18_____                   _____

                                                              **SIDON BOU**

1

M
02/22/2018  12:37 PM          Page 1 of 24

This Document Recorded      Doc Id: 53331170   Doc Code: M
02/22/2018  12:37 PM    Receipt #:18-17978
Rec Fee: $226.75
Records Department, City of Philadelphia          PU

*funnie mue freedom*

When recorded, return to:
**American Financial Network, Inc.,**
**DBA: Orion Lending**
**Attn: Final Document Department**
**10 Pointe Drive Suite 330**
**Brea, CA 92821**
**714-831-4000**

**This document was prepared by:**
**American Financial Network, Inc.,**
**DBA: Orion Lending**
**770 The City Drive South Ste. 1100**
**Orange, CA 92868**
**844-306-7466**

LO█

──────── [Space Above This Line For Recording Data] ────────

## MORTGAGE

M█
M█

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words
used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated
**February 15, 2018,**       together with all Riders to this document.
**(B) "Borrower"** is    **NAVIN SOK AND PETER S. SOK, WIFE AND HUSBAND, A**
**1/2 INTEREST AS TENANTS BY THE ENTIRETY AND SIDON BOU, THE**
**REMAINING 1/2 INTEREST; AND AS TO THE WHOLE THEREOF, JOINT TENANTS**
**WITH THE RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON.**

Borrower is the mortgagor under this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                    Page 1 of 23                    PAEDEDL  0416
                                                                   PAEDEDL (CLS)

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
**(D) "Lender"** is    **American Financial Network, Inc., DBA: Orion Lending .**

Lender is  **a California Corporation,**                organized and existing under the
laws of **California.**                                      Lender's address is
**770 The City Drive South Ste. 1100, Orange, CA 92868.**

**(E) "Note"** means the promissory note signed by Borrower and dated
**February 15, 2018.**        The Note states that Borrower owes Lender  **ONE
HUNDRED FORTY THREE THOUSAND FOUR HUNDRED FIFTY AND NO/100* * ***
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* Dollars (U.S. **$143,450.00**        )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2048.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider    ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and

*3*

—

**LO** █████████████

assigns of MERS the following described property located in the
**County**                                                    [Type of Recording Jurisdiction]
of **Philadelphia**
[Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
AS "EXHIBIT A".**
**APN #:** ████████████

which currently has the address of    **6031 N Front St, Philadelphia,**

[Street] [City]

Pennsylvania **19120**         ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property,
and all easements, appurtenances, and fixtures now or hereafter a part of the property.
All replacements and additions shall also be covered by this Security Instrument. All of
the foregoing is referred to in this Security Instrument as the "Property." Borrower under-
stands and agrees that MERS holds only legal title to the interests granted by Borrower
in this Security Instrument, but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any
or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing
and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby
conveyed and has the right to mortgage, grant and convey the Property and that the
Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to
any encumbrances of record.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                              Page 4 of 23                          PAEDEDL  0416
                                                                                   PAEDEDL (CLS)

4

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied

5

first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to

6

Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing

7

such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage

clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall

continue to occupy the Property as Borrower's principal residence for at least one year
after the date of occupancy, unless Lender otherwise agrees in writing, which consent
shall not be unreasonably withheld, or unless extenuating circumstances exist which are
beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Bor-
rower shall not destroy, damage or impair the Property, allow the Property to deteriorate
or commit waste on the Property. Whether or not Borrower is residing in the Property,
Borrower shall maintain the Property in order to prevent the Property from deteriorating
or decreasing in value due to its condition. Unless it is determined pursuant to Section 5
that repair or restoration is not economically feasible, Borrower shall promptly repair the
Property if damaged to avoid further deterioration or damage. If insurance or condem-
nation proceeds are paid in connection with damage to, or the taking of, the Property,
Borrower shall be responsible for repairing or restoring the Property only if Lender has
released proceeds for such purposes. Lender may disburse proceeds for the repairs and
restoration in a single payment or in a series of progress payments as the work is com-
pleted. If the insurance or condemnation proceeds are not sufficient to repair or restore
the Property, Borrower is not relieved of Borrower's obligation for the completion of such
repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Prop-
erty. If it has reasonable cause, Lender may inspect the interior of the improvements on
the Property. Lender shall give Borrower notice at the time of or prior to such an interior
inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Bor-
rower or with Borrower's knowledge or consent gave materially false, misleading, or
inaccurate information or statements to Lender (or failed to provide Lender with material
information) in connection with the Loan. Material representations include, but are not
limited to, representations concerning Borrower's occupancy of the Property as Bor-
rower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security
Instrument.** If (a) Borrower fails to perform the covenants and agreements contained
in this Security Instrument, (b) there is a legal proceeding that might significantly affect
Lender's interest in the Property and/or rights under this Security Instrument (such as a
proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a
lien which may attain priority over this Security Instrument or to enforce laws or regula-
tions), or (c) Borrower has abandoned the Property, then Lender may do and pay for
whatever is reasonable or appropriate to protect Lender's interest in the Property and

10

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer

selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                   Page 12 of 23                                   PAEDEDL   0416
PAEDEDL (CLS)

/2

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this

Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this

Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                          Page 15 of 23                          PAEDEDL  0416
PAEDEDL (CLS)

*15*

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions

16

are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                      Page 17 of 23                          PAEDEDL  0416
PAEDEDL (CLS)

*17*

time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                          Page 18 of 23                          PAEDEDL  0416
PAEDEDL (CLS)

/8

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                          Page 19 of 23                          PAEDEDL  0416
                                                                              PAEDEDL (CLS)

*19*

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                              Page 20 of 23                              PAEDEDL  0416
PAEDEDL (CLS)

20

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____    2 . 15 - 18    (Seal)
**NAVIN SOK**                                              **DATE**

_____    2|15|18    (Seal)
**PETER S. SOK**                                           **DATE**

*Sidon Bou by Timmy Kuoch, ATTORNEY - IN .PACT*    2/15/18    (Seal)
**SIDON BOU, BY TIMMY KUOCH , ATTORNEY-IN-FACT**            **DATE**

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                        Page 21 of 23                        PAEDEDL  0416
                                                                           PAEDEDL (CLS)

21

Case 20-14500-amc    Doc 37    Filed 11/16/22    Entered 11/16/22 14:15:56    Desc Main
Document      Page 28 of 42

**Commonwealth of PENNSYLVANIA**

**County of** _Philadel_phia

On this, the __15th__ day of _February_ , _2018_ , before me,     Anne Johnson
_____, the undersigned officer, personally appeared NAVIN SOK AND PETER S. SOK AND SIDON BOU, BY TIMMY KUOCH , ATTORNEY-IN-FACT, known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

**My commission expires:** _____      _____

```
COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
  ANNE JOHNSON, Notary Public
  City of Philadelphia, Phila. County
My Commission Expires September 11, 2021
```

**Title of Officer**

**Lender: American Financial Network, Inc., DBA: Orion Lending**
**NMLS ID:** ▮
**Broker: C**▮**nancial Mortgage, LLC**
**NMLS ID:** ▮
**Loan Orig**▮**ndy Ly**
**NMLS ID:** ▮

22

Certificate of Residence

I, _____Anne Johnson_____ , do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _15th_____ day of __February_____ 2018

_____
Agent of Mortgagee

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                    Page 23 of 23                          PAEDEDL  0416
                                                                                          PAEDEDL (CLS)

23

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 61st Ward of the City of Philadelphia aforesaid and described according to a Plan made by Joseph F. Delany, Esquire, Surveyor and Regulator of the 5th Survey District on February 3, 1950, as follows to wit, on the Southeasterly side of Front Street (80 feet wide) at the distance of 280 feet, 6 inches Northeastwardly from the Northeasterly side of Champlost Avenue (70 feet wide).

CONTAINING in front or breadth on the said Front Street 18 feet, 3 inches and extending of that width in length or depth Southeastwardly between parallel lines at right angles to the said Front Street 106 feet, 6 inches to a point in the center line of a 15 feet wide driveway which extends Northeastwardly into Spencer Avenue (60 feet wide) and Southwestwardly into said Champlost Avenue, the Northeast and Southwest lines thereof passing through the center of the party walls between this premises and the premises adjoining on the Northeast and Southwest respectively.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid 15 feet wide driveway as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the properties abutting thereon and entitled to the use thereof.

SUBJECT, however, to the proportionate part of the expense of keeping the aforesaid driveway in good order and repair.

BEING known as No. 6031 North Front Street.

BEING BRT

24

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. **208-528-9895**

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN FINANCIAL NETWORK, INC., DBA: ORION LENDING, ITS SUCCESSORS AND ASSIGNS** located at **1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834** or **P.O. Box 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **MATRIX FINANCIAL SERVICES CORPORATION** located at **601 CARLSON PKWY, STE 1400, MINNETONKA, MN 55305**, Assignee, its successors and assigns, that certain Mortgage dated **FEBRUARY 15, 2018** executed by **NAVIN SOK AND PETER S. SOK, WIFE AND HUSBAND, A 1/2 INTEREST AS TENANTS BY THE ENTIRETY AND SIDON BOU, THE REMAINING 1/2 INTEREST; AND AS TO THE WHOLE THEREOF, JOINT TENANTS WITH THE RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN FINANCIAL NETWORK, INC., DBA: ORION LENDING, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$143,450.00** and recorded on **FEBRUARY 22, 2018** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **53331170**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **6031 N FRONT ST, PHILADELPHIA, PA 19120**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **DECEMBER 08, 2020**.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN FINANCIAL NETWORK, INC., DBA: ORION LENDING, ITS SUCCESSORS AND ASSIGNS**

**KATIE OLSON, VICE PRESIDENT**

Page 1 of 3

STATE OF **IDAHO**                    COUNTY OF **BONNEVILLE**        ) ss.

On **DECEMBER 08, 2020**, before me, **ADDISON RICE**, personally appeared **KATIE OLSON** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN FINANCIAL NETWORK, INC., DBA: ORION LENDING, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
**ADDISON RICE (COMMISSION EXP. 06/15/2024)**
NOTARY PUBLIC

```
ADDISON RICE
Notary Public - State of Idaho
Commission Number 20181118
My Commission Expires Jun 15, 2024
```

I do hereby certify that the precise address of the Assignee Residence is:
**MATRIX FINANCIAL SERVICES CORPORATION, 601 CARLSON PKWY, STE 1400, MINNETONKA, MN 55305**

_____
**KATIE OLSON, VICE PRESIDENT**

███████████████ OK

LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 61st Ward of the City of Philadelphia aforesaid and described according to a Plan made by Joseph F. Delany, Esquire, Surveyor and Regulator of the 5th Survey District on February 3, 1950, as follows to wit, on the Southeasterly side of Front Street (80 feet wide) at the distance of 280 feet, 6 inches Northeastwardly from the Northeasterly side of Champlost Avenue (70 feet wide).

CONTAINING in front or breadth on the said Front Street 18 feet, 3 inches and extending of that width in length or depth Southeastwardly between parallel lines at right angles to the said Front Street 106 feet, 6 inches to a point in the center line of a 15 feet wide driveway which extends Northeastwardly into Spencer Avenue (60 feet wide) and Southwestwardly into said Champlost Avenue, the Northeast and Southwest lines thereof passing through the center of the party walls between this premises and the premises adjoining on the Northeast and Southwest respectively.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid 15 feet wide driveway as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the properties abutting thereon and entitled to the use thereof.

SUBJECT, however, to the proportionate part of the expense of keeping the aforesaid driveway in good order and repair.

**Flagstar**
**Bank**

5151 CORPORATE DR
TROY MI 48098-2639
RETURN SERVICE REQUESTED

NAVIN SOK
SIDON BOU
6031 N FRONT ST
PHILADELPHIA PA 19120-2010

Property Address:    6031 N Front St
                     Philadelphia PA 19120

November 11, 2020

## PAYMENT DEFERRAL AGREEMENT

You were previously notified that you were approved for a payment deferral, which defers your past-due amounts to bring your mortgage current; and, you have completed the requirements for accepting the deferral.

A payment deferral brings your mortgage current and delays repayment of certain past-due monthly principal and interest payments, as well as other amounts we paid on your behalf related to the past-due monthly payments. You will be responsible for paying the past-due amounts upon the maturity of the mortgage or earlier upon the sale or transfer of the property, refinance of the mortgage loan, or payoff of the interest bearing unpaid principal balance.

**Terms of the Payment Deferral.** As of November 11, 2020, we have:

♦ Adjusted the due date of your next scheduled monthly payment to bring your mortgage current;

♦ Deferred the scheduled repayment of the total past-due amounts to the maturity date of the mortgage or earlier upon the sale or transfer of the property, refinance of the mortgage loan, or payoff of the interest-bearing unpaid principal balance; and

♦ Waived any late charges.[1]

The specific terms of your payment deferral are as follows:

| | |
|---|---|
| Number of past due principal and interest payments deferred: | 7 |
| Past-due principal and interest payment amount deferred: | $759.15 |
| Other past-due amounts deferred:[2] | $1,194.06 |
| Total past-due amounts deferred:[3] | $6,508.11 |
| Late charges waived: | $75.92 |

Now that your payment deferral is effective, you must continue to make your scheduled monthly payment to keep your mortgage current. Your next monthly payment is due on December 1, 2020.

_____

Flagstar Authorized Representative Signature

_____

[1] Late charges were not assessed during the forbearance period. Any fees waived, as noted in the terms table, were assessed prior to the COVID-19 forbearance plan.

[2] Includes any amounts we paid on your behalf related to the past-due payments, such as taxes or insurance, as authorized by your mortgage documents.

[3] Interest will not be charged on the total past-due amounts to be deferred. The payment deferral will not change any other terms of your mortgage.

EQUAL HOUSING LENDER    Member FDIC

## Frequently Asked Questions

**What other amounts might I owe?**

♦   There are no processing fees for this payment deferral.

♦   If there is already a principal forbearance amount that will be due at the maturity of your loan, you will still be responsible for any such amount that remains at the maturity date of the mortgage loan or earlier upon the sale or transfer of the property, refinance of the mortgage loan, or payoff of the interest-bearing unpaid principal balance

**How will a payment deferral impact my credit?**

♦   Since your payment deferral is completed, you will be considered current on your mortgage.

♦   For information on how your credit report may impact your credit score, go to: consumerfinance.gov/consumer-tools/credit-reports-and-scores/.

**What if I need further assistance?**

♦   Please contact us at any time at (866) 206-5241, especially if you experience another event that may prevent you from making your mortgage payment.

♦   For a list of HUD-approved housing counseling agencies that can provide free foreclosure prevention and debt management information, and may be able to provide translation or other language assistance, contact one of the following federal government agencies:

   •   The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or hud.gov/counseling.

   •   The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or consumerfinance/gov/mortgagehelp.

♦   For additional information on how to avoid foreclosure, including help for military servicemembers, you may also visit Fannie Mae's knowyouroptions.com.

**What if my loan was previously modified under the Home Affordable Modification Program (HAMP)?**

♦   Upon the payment deferral becoming effective, you are ineligible to receive any future HAMP "Pay for Performance" incentives, including any accrued but unpaid incentives.

EQUAL HOUSING LENDER    Member FDIC

If you have any questions, please call the Hardship Relief Task Force at (866) 206-5241, Monday-Friday 8:30 a.m.-9 p.m. ET.

Flagstar remains committed to helping you through this difficult time.

Sincerely,


Hardship Relief Task Force
Flagstar Bank


*FAIR DEBT COLLECTION PRACTICES.* *THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT. ALL INFORMATION OBTAINED RELATING TO THIS LETTER WILL BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR ORIGINAL OBLIGATION WAS DISCHARGED, OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY UNDER TITLE 11 OF THE UNITED STATES CODE, THIS STATEMENT IS FOR COMPLIANCE AND/OR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE AN ATTEMPT TO COLLECT A DEBT OR IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION. HOWEVER, THE CREDITOR RETAINS RIGHTS UNDER ITS SECURITY INSTRUMENT, INCLUDING THE RIGHT TO FORECLOSE ITS LIEN, AS PERMITTED BY GOVERNING LAW.*


**Submit a Qualified Written Request, Notice of Error, or Request for Information** to the address listed below. Please include your loan number and sufficient detail to inform Flagstar of the basis of your inquiry, qualified written request, notice of error, or request for information.

Flagstar Bank
Attn: QWR/NOE/RFI • 2B-116
5151 Corporate Drive
Troy, MI 48098-2639


**Attention Military Servicemembers and Dependents:** The Servicemembers Civil Relief Act and certain state laws provide important protections or benefits for eligible Servicemembers and their dependents, including protection from foreclosure during and after active duty, pursuant to governing law. Flagstar Bank will comply with the Servicemembers Civil Relief Act for eligible Servicemembers and dependents, unless it receives a court order or a written waiver from the Servicemember.

EQUAL HOUSING LENDER    Member FDIC

eRecorded in Philadelphia PA   Doc Id: 54087799
08/22/2022 02:27 PM   Page 1 of 3   Rec Fee: $224.75
Receipt#: 22-125413
Records Department   Doc Code: A

---

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)

**ASSIGNMENT OF MORTGAGE**

**KNOW ALL MEN BY THESE PRESENTS**

STATE OF: PENNSYLVANIA                              L▮

COUNTY OF: PHILADELPHIA

AF▮

For value received, MATRIX FINANCIAL SERVICES CORPORATION, AN ARIZONA CORPORATION, which has an address of 601 CARLSON PKWY, STE. 1400, MINNETONKA, MN 55305 (Assignor) acting herein by and through a duly authorized officer, does hereby assign and transfers to FLAGSTAR BANK, FSB whose address is 5151 CORPORATE DR, TROY, MI 48098 (Assignee), all of its right, title and interest in the below described MORTGAGE.

MORTGAGE executed by NAVIN SOK, PETER S. SOK, AND SIDON BOU to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN FINANCIAL NETWORK INC DBA ORION LENDING, IT'S SUCCESSORS AND ASSIGNS, securing the amount of $143,450.00 dated 02/15/2018 and recorded 02/22/2018 as DOCUMENT NO. 53331170, which was recorded on the lot(s) or parcel(s) described therein situated in the City of PHILADELPHIA, County of PHILADELPHIA, State of PENNSYLVANIA

To have and to hold unto said Assignee said above described MORTGAGE, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

1 of 3

**SEE ATTACHED LEGAL DESCRIPTION**

Commonly Known As: 6031 FRONT ST, PHILADELPHIA, PA 19120

ON 08/18/2022

MATRIX FINANCIAL SERVICES
CORPORATION, AN ARIZONA CORPORATION

WITNESSES:
BY: _____
KIMBERLY FISCHER

BY: _____

BY: _____
LUCAS CEDRE

SENKA CAMPARA
ITS: BANK OFFICER OF FLAGSTAR
BANK, FSB ATTORNEY IN FACT FOR MATRIX FINANCIAL
SERVICES CORPORATION, AN ARIZONA CORPORATION,
UNDER SPECIAL LIMITED IRREVOCABLE POWER OF
ATTORNEY

STATE OF MICHIGAN
COUNTY OF OAKLAND

ACKNOWLEDGEMENT

On 08/18/2022, before me, JANET L TESTER, a Notary Public, personally appeared SENKA
CAMPARA, BANK OFFICER OF FLAGSTAR BANK, FSB ATTORNEY IN FACT FOR MATRIX
FINANCIAL SERVICES CORPORATION, AN ARIZONA CORPORATION, UNDER SPECIAL LIMITED
IRREVOCABLE POWER OF ATTORNEY personally known to me, or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) that by
his/her/their signature(s) on the document. I certify under PENALTY OF PERJURY under the laws of
the State of MICHIGAN that the foregoing paragraph is true and correct. I further certify SENKA
CAMPARA signed, sealed, attested and delivered this document as a voluntary act in my presence.

RECORD AND RETURN TO:
FLAGSTAR BANK, FSB
5151 CORPORATE DRIVE
MS-W-535-1 FINAL DOCS DEPT
TROY, MICHIGAN 48098
DRAFTED BY: ROCHELLE PARENT

_____
Notary Public

JANET L. TESTER
NOTARY PUBLIC - STATE OF MICHIGAN
WAYNE COUNTY
MY COMMISSION EXPIRES JULY 14, 20 24
ACTING IN THE COUNTY OF OAKLAND

2 of 3

LO█████████

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 61st Ward of the City of Philadelphia aforesaid and described according to a Plan made by Joseph F. Delany, Esquire, Surveyor and Regulator of the 5th Survey District on February 3, 1950, as follows to wit, on the Southeasterly side of Front Street (80 feet wide) at the distance of 260 feet, 6 inches Northeastwardly from the Northeasterly side of Champlost Avenue (70 feet wide).

CONTAINING in front or breadth on the said Front Street 18 feet, 3 inches and extending of that width in length or depth Southeastwardly between parallel lines at right angles to the said Front Street 106 feet, 6 inches to a point in the center line of a 15 feet wide driveway which extends Northeastwardly into Spencer Avenue (60 feet wide) and Southwestwardly into said Champlost Avenue, the Northeast and Southwest lines thereof passing through the center of the party walls between this premises and the premises adjoining on the Northeast and Southwest respectively.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid 15 feet wide driveway as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the properties abutting thereon and entitled to the use thereof.

SUBJECT, however, to the proportionate part of the expense of keeping the aforesaid driveway in good order and repair.

BEING known as No. 6031 North Front Street.

BEING BRT█████████

UNDER AND SUBJECT to all conditions, covenants and restrictions of record.

BEING the same premises which Ernest C. Mauch and Laura M. Mauch, husband and wife by Deed dated 10/20/1992 and recorded 12/11/1992 in Philadelphia County in Deed Book VCS 205 Page 545 conveyed unto Stephen M. Bodner, in fee.

BEING the same premises which Mozhiattu C. Joy (M.C. Joy) by Deed dated 2/3/2006 and recorded 2/15/2006 in Philadelphia County as Document No. 51380292 conveyed unto Renai J. Dunmyer, in fee.

BEING the same premises which Jewell Williams, Sheriff of the County of Philadelphia by Deed dated 6/27/2017 and recorded 7/24/2017 in Philadelphia County as Document No. 53242414 conveyed unto The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-6, in fee.

BEING the same premises which The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates Series 2006-6 By Ditech Financial LLC, fka Green Tree Servicing LLC as Service with Delegated Authority for the Trustee by Power of Attorney recorded in Philadelphia County on April 27, 2016, Document No. 53051317 by Deed dated August 9, 2017 and recorded August 16, 2017 in Philadelphia County as Document No. 53253808 conveyed unto Kathy T. Nguyen, in fee.

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)

**ASSIGNMENT OF MORTGAGE**

**KNOW ALL MEN BY THESE PRESENTS**

**STATE OF: PENNSYLVANIA**                                      **LOAN** ███████████

**COUNTY OF: PHILADELPHIA**

**APN#** ████████████

For value received, **MATRIX FINANCIAL SERVICES CORPORATION, AN ARIZONA CORPORATION,** which has an address of **601 CARLSON PKWY, STE. 1400, MINNETONKA, MN 55305** (Assignor) acting herein by and through a duly authorized officer, does hereby assign and transfers to **FLAGSTAR BANK, FSB** whose address is **5151 CORPORATE DR, TROY, MI 48098** (Assignee), all of its right, title and interest in the below described **MORTGAGE.**

MORTGAGE executed by **NAVIN SOK, PETER S. SOK, AND SIDON BOU** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.("MERS"), AS MORTGAGEE,  AS NOMINEE FOR AMERICAN FINANCIAL NETWORK INC DBA ORION LENDING, IT'S SUCCESSORS AND ASSIGNS,** securing the amount of **$143,450.00** dated **02/15/2018** and recorded **02/22/2018** as **DOCUMENT NO. 53331170,** which was recorded on the lot(s) or parcel(s) described therein situated in the City of **PHILADELPHIA,** County of **PHILADELPHIA,** State of **PENNSYLVANIA**

To have and to hold unto said Assignee said above described **MORTGAGE,** together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

**SEE ATTACHED NOTE/INTEREST TRANSFER HISTORY**

1 of 3

LOAN# ███████

**SEE ATTACHED LEGAL DESCRIPTION**

Commonly Known As: 6031 FRONT ST, PHILADELPHIA, PA 19120

ON _08/18/2022_

WITNESSES:

BY: _____
KIMBERLY FISCHER

BY: _____
LUCAS CEDRE

**MATRIX FINANCIAL SERVICES
CORPORATION, AN ARIZONA CORPORATION**

BY: _____
SENKA CAMPARA
ITS: BANK OFFICER OF FLAGSTAR
BANK, FSB ATTORNEY IN FACT FOR MATRIX FINANCIAL
SERVICES CORPORATION, AN ARIZONA CORPORATION,
UNDER SPECIAL LIMITED IRREVOCABLE POWER OF
ATTORNEY

STATE OF MICHIGAN
COUNTY OF OAKLAND

**ACKNOWLEDGEMENT**

On 08/18/2022, before me, JANET L TESTER, a Notary Public, personally appeared SENKA
CAMPARA, BANK OFFICER OF FLAGSTAR BANK, FSB ATTORNEY IN FACT FOR MATRIX
FINANCIAL SERVICES CORPORATION, AN ARIZONA CORPORATION, UNDER SPECIAL LIMITED
IRREVOCABLE POWER OF ATTORNEY personally known to me, or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) that by
his/her/their signature(s) on the document. I certify under PENALTY OF PERJURY under the laws of
the State of MICHIGAN that the foregoing paragraph is true and correct. I further certify SENKA
CAMPARA signed, sealed, attested and delivered this document as a voluntary act in my presence.

RECORD AND RETURN TO:
FLAGSTAR BANK, FSB
5151 CORPORATE DRIVE
MS-W-535-1 FINAL DOCS DEPT
TROY, MICHIGAN 48098
DRAFTED BY: ROCHELLE PARENT

_____
**Notary Public**

JANET L. TESTER
NOTARY PUBLIC - STATE OF MICHIGAN
WAYNE COUNTY
MY COMMISSION EXPIRES JULY 14, 20 24
ACTING IN THE COUNTY OF OAKLAND

2 of 3

L█ ██████████

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 61st Ward of the City of Philadelphia aforesaid and described according to a Plan made by Joseph F. Delany, Esquire, Surveyor and Regulator of the 5th Survey District on February 3, 1950, as follows to wit, on the Southeasterly side of Front Street (80 feet wide) at the distance of 280 feet, 6 inches Northeastwardly from the Northeasterly side of Champlost Avenue (70 feet wide).

CONTAINING in front or breadth on the said Front Street 16 feet, 3 inches and extending of that width in length or depth Southeastwardly between parallel lines at right angles to the said Front Street 106 feet, 6 inches to a point in the center line of a 15 feet wide driveway which extends Northeastwardly into Spencer Avenue (60 feet wide) and Southwestwardly into said Champlost Avenue, the Northeast and Southwest lines thereof passing through the center of the party walls between this premises and the premises adjoining on the Northeast and Southwest respectively.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid 15 feet wide driveway as and for a driveway, passageway and watercourse at all times hereafter, forever in common with the owners, tenants and occupiers of the properties abutting thereon and entitled to the use thereof.

SUBJECT, however, to the proportionate part of the expense of keeping the aforesaid driveway in good order and repair.

BEING known as No. 6031 North Front Street.

BEING BRT# █████████

UNDER AND SUBJECT to all conditions, covenants and restrictions of record.

BEING the same premises which Ernest C. Mauch and Laura M. Mauch, husband and wife by Deed dated 10/20/1992 and recorded 12/11/1992 in Philadelphia County in Deed Book VCS 205 Page 545 conveyed unto Stephen M. Bodner, in fee.

BEING the same premises which Mozhiattu C. Joy (M.C. Joy) by Deed dated 2/3/2006 and recorded 2/15/2006 in Philadelphia County as Document No. 51380292 conveyed unto Renai J. Dunmyer, in fee.

BEING the same premises which Jewell Williams, Sheriff of the County of Philadelphia by Deed dated 6/27/2017 and recorded 7/24/2017 in Philadelphia County as Document No. 53242414 conveyed unto The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-6, in fee.

BEING the same premises which The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates Series 2006-6 By Ditech Financial LLC, fka Green Tree Servicing LLC as Service with Delegated Authority for the Trustee by Power of Attorney recorded in Philadelphia County on April 27, 2016, Document No. 53051317 by Deed dated August 9, 2017 and recorded August 16, 2017 in Philadelphia County as Document No. 53253808 conveyed unto Kathy T. Nguyen, in fee.